IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| M. AKIFUR RAHMAN, NIAZ ANWAR, KHALID BHATTI, SHIMROTE ISHAQUE, OUSSAMA JAMMAL, ELIE R. KHOURY, FARIDEH KHOURY, and SAMMY U. REHMAN, on behalf of themselves and all similarly situated persons; and MASOODA RAHMAN and RIFFAT MEHMOOD, on behalf themselves and all similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL CHERTOFF, Secretary of the U.S. Department of Homeland Security, in his official capacity; ROBERT S. MUELLER III, Director of the Federal Bureau of Investigation, in his official capacity, W. RALPH BASHAM, Commissioner of U.S. Customs and Border Protection, in his official capacity; and JULIE L. MYERS, Assistant Secretary of U.S. Immigration and Customs Enforcement, in her official capacity, <br><br> Defendants. | No. 05 C 3761 <br><br> Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

The named plaintiffs, on behalf of all others similarly situated, have sued various government officials seeking declaratory and injunctive relief because defendants' policies and practices, which allegedly cause repeated, lengthy and abusive border detentions of innocent U.S. citizens, allegedly violate their civil rights under the Fourth and Fifth Amendments. Before the Court is plaintiffs' motion to unseal four pleadings. For the following reasons, the Court denies the motion.

## Procedural History

On November 9, 2005, after concluding that the parties had established good cause to protect information relating to the alleged border stops under the law enforcement and investigatory files privilege, the Court granted the parties' joint motion for a protective order and a Modified Protective Order was entered shortly thereafter. The Order stated:

> The information subject to this Protective Order is information that concerns the particular circumstances of the four border stops at issue in the Amended Complaint that is subject to the law enforcement and investigatory files privilege. Information designated by the defendants under this order shall include only that necessary (1) to prevent public disclosure of law enforcement techniques and procedures, (2) to preserve the confidentiality of sources, (3) to protect witnesses and law enforcement personnel, (4) to safeguard the privacy of individuals involved in an investigation, or (5) to otherwise prevent interference with an investigation or harms to law enforcement efforts which may arise from public disclosure of investigative files, and that: (i) has been or may be submitted on the record of this case by the Defendants sued in their official or individual capacity as authorized by the United States either through written submissions, including briefs and declarations, or through deposition testimony by an official, employee, or agent of the Defendants sued in their official or individual capacity; or (ii) is repeated or referred to by the plaintiffs in response to any submission made by the Defendants sued in their individual or official capacities under (i).

(Modified Protective Order ¶ 2.)

On December 1, 2006, plaintiffs filed their Response to Defendants' Motion to Dismiss as a restricted document. On December 6, plaintiffs filed a Motion to Compel Production of Documents as a restricted document. On December 15, 2006, plaintiffs filed their Reply Memorandum in Further Support of Class Certification as a restricted document. On December 21, 2006, plaintiffs filed a Memorandum in Support of Their Emergency Motion for a Preliminary Injunction as a restricted document. On January 18, 2007, plaintiffs filed public versions of these four documents with only those portions covered by the Modified Protective Order redacted.

Plaintiffs now challenge defendants' designation of the redacted information in plaintiffs' four filings as governed by the Modified Protective Order. (*Id.* ¶ 9.) As provided in that order, defendants are required to show cause why the redacted portions of the four documents should not be excluded from the Protective Order. (*Id.* ¶ 10.)

## Discussion

One concern causes the Court to pause before reaching the issue raised by plaintiffs. In this case, all of the information sought to be unsealed has been provided to plaintiffs' counsel, albeit under the Modified Protective Order. Does a plaintiff, who has unrestricted access to all discovery, have standing to challenge the sealing of portions of filed documents on behalf of the public at large? The Third Circuit, the only one to have addressed the issue, answers this question in the negative. *See Ernst v. Child & Youth Servs.*, 108 F.3d 486, 499-500 (3rd Cir. 1997) (stating plaintiff "failed to allege the kind of concrete and particularized injury necessary to establish standing to assert a First Amendment challenge . . . [because] she has not alleged that she has ever been excluded . . . from a proceeding to which she sought access"). *Cf. House v. Davidson*, No. 85 C 9983, 1989 WL 915, at *3 (N.D. Ill. Jan. 3, 1989) (describing whether a litigant has First Amendment standing to litigate the right to have others attend a civil proceeding as "largely uncharted waters"), *aff'd, House v. Belford*, 956 F.2d 711 (7th Cir. 1992).

The Court need not reach the issue, however, because the Modified Protective Order, dated November 8, 2005, merely allowed M. Akifur Rahman, Masooda Rahman, and plaintiffs' counsel access to restricted documents. Since then, the complaint was amended to add plaintiffs Niaz Anwar, Khalid Bhatti, Shimrote Ishaque, Oussama Jammal, Elie R. Khoury, Farideh Khoury, Sammy U. Rehman and Riffat Mehmood. However, the Modified Protective Order was not amended to allow these plaintiffs access to restricted documents. Defendants do not argue

3

that plaintiffs have not abided by the terms of the Modified Protective Order. Because some of the plaintiffs arguably do not have unrestricted access to the sealed portions of the filed documents, they share the same injury as the public at large. Having satisfied itself that some of the plaintiffs have not personally had access to the documents, the Court turns to the issue whether the redacted portions of plaintiffs' four filings must be unsealed.

That some of the plaintiffs did not personally receive the protected discovery material does not change the fact that Akifur Rahman, Mehmood Rahman and plaintiffs' counsel did and thereafter attached it to plaintiffs' briefs filed with the Court. Where a recipient of protected discovery material introduces it into evidence, the existence of a protective order becomes significant. *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1311 (7th Cir. 1984). "[J]udicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Federal Rule of Civil Procedure ("Rule") 26(c) governs protective orders and permits parties, "for good cause shown" to seek protection against the disclosure of privileged information. Fed. R. Civ. P. 26(c). To determine whether there is good cause to seal portions of the four filings, the Court must balance "the harm to the party seeking the protective order and the importance of disclosure to the public." *Doe v. Marsalis*, 202 F.R.D. 233, 237 (N.D. Ill. 2001) (quotation omitted).

"Justified originally by common-law traditions predating the enactment of our Constitution, the right of access belonging to the press and the general public also has a First Amendment basis." *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994). "The general rule is that the record of a judicial proceeding is public." *Jessup v. Luther*, 277 F.3d 926, 927 (7th Cir. 2002). "Even disputes about claims of national security are

litigated in the open." *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000) (stating that briefs filed in a case involving Pentagon papers and a case involving plans for a hydrogen bomb were available to the press, "although sealed appendices discussed in detail the documents for which protection was sought.").

"Judges deliberate in private but issue public decisions after public arguments based on public records." *Id.* at 568. "Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification." *Id.* Accordingly, "*dispositive* documents in any litigation enter the public record notwithstanding any earlier agreement [governing discovery]." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002). More specifically, where "portions of discovery . . . are filed and form the basis of judicial action," such discovery "must eventually be released," but "litigants and judges may protect properly confidential matters by using sealed appendices to briefs and opinions." *Union Oil Co.*, 220 F.3d at 568.

The Court must determine whether any of the four documents filed by plaintiffs, *i.e.*, the emergency motion for preliminary injunction, the motion to compel discovery, the reply in support of class certification and the response to the motion to dismiss, were dispositive documents that formed the basis of judicial action. If they were, then the presumption of the public's right to access the redacted portions of those documents attaches.

First, plaintiffs withdrew their emergency motion for preliminary injunction. This obviated any need for the Court to make any ruling whatsoever as to the motion. *But see In re Cont'l*, 732 F.2d at 1310 (stating that where motion to terminate derivative action was withdrawn but where judge announces tentative impressions as to merits of motion which had same practical effect as ruling on the motion, presumption of public access attaches). Because

the document did not form the basis of judicial action, the presumption of public access does not attach to the redacted portions of that document.[1]

Whether the remaining three documents at issue are dispositive depends on how broadly or narrowly one defines the term. Narrowly construed, a document may be deemed dispositive when it provides the basis for deciding the final outcome of a claim or the entire case. *See, e.g., In re Cont'l*, 732 F.2d at 1305 (stating that "the Report became crucial to disposition of the motion to terminate" the shareholders' derivative claims); *House*, 1989 WL 915, at *3 (discussing that on a motion to dismiss, the court is required to accept allegations as true and thus the need for public access is "greatly reduced"). Broadly interpreted, a document may be dispositive in the sense that it addresses any issue, including discovery disputes, raised before the court. *See, e.g., Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999) (stating in dicta that "[m]ost cases endorse a presumption of public access to discovery materials").

Under the broader definition, the redacted portions of the remaining three documents were filed so that the Court could rule on issues pertaining to the motions before it. Out of an abundance of caution and due to the paucity of binding authority on the issue, the Court assumes, without holding, that a presumption of public access attaches to plaintiffs' motion to compel discovery, reply in support of class certification and response to the motion to dismiss.

However, whether or not the presumption of public access attaches to the redacted portions of plaintiffs' filings, or, in other words, regardless of whether the court analyzes the issue under the rubric of Rule 26(c)'s "good cause" or the common-law and First Amendment

---

[1] Because plaintiffs did not withdraw this motion due to a settlement of this case, the Court finds plaintiffs' reliance on *Mokhiber v. Davis*, 537 A.2d 1110, 1112-13 (D.C. App. Ct. 1988), unavailing and unpersuasive.

6

right to access, the ultimate test is similar. A court must balance the public interest in disclosure against the litigant's interest in confidentiality. *Compare Citizens First Nat'l Bank*, 178 F.3d at 945 (stating that the public's interest in open judicial proceeding "does not always trump the property and privacy interests of the litigants, but it can be overridden only if the latter interests predominate in the particular case, that is, only if there is good cause for sealing a part or the whole of the record in that case"), *with Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 9 (1986) (stating that "even when a right of access attaches, it is not absolute"), *and Grove Fresh Distribs.*, 24 F.3d at 897 (stating that the "presumption is rebuttable upon demonstration that suppression is essential to preserve higher values and is narrowly tailored to serve that interest" (quotation omitted)), *and In re Cont'l*, 732 F.2d at 1313 (holding that once the presumption attaches, the court "must balance the public interest underlying that presumption against [the litigant's] interest in confidentiality").

To establish good cause for the designation of the material at issue as restricted under the Modified Protective Order and to rebut the presumption of the right of public access, defendants argue that the redacted portions of the four documents plaintiffs seek to unseal are protected by the law enforcement investigative privilege. "The purpose of the law enforcement investigative privilege is to protect law enforcement efforts from harm that might arise from public disclosure of investigatory files." *Doe v. Hudgins*, 175 F.R.D. 511, 514 (N.D. Ill. 1997). "The Government . . . has a compelling interest in preserving the secrecy of law enforcement techniques." *United States v. Corces*, No. 92-28-CR-T-17B, 1997 WL 447979, at \*9 (M.D. Fla. July 28, 1997), *aff'd*, 152 F.3d 934 (11th Cir. 1998). The party claiming the privilege has the burden of establishing its applicability. *In re United Telecomm., Inc. Sec. Litig.*, 799 F. Supp. 1206, 1208 (D.D.C. 1992); *Hallett v. Vill. of Richmond*, No. 05 C 50044, 2006 WL 2088214, at \*2 (N.D. Ill. July 25, 2006). While no court in this circuit has done so, "[t]he D.C. Circuit recently spelled out the

required elements for proper invocation of the investigatory law enforcement privilege . . . ."

See *In re United Telecomm., Inc. Sec. Litig.*, 799 F. Supp. at 1208.

> To sustain the claim, three requirements must be met: (1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.

*In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988).

The Court must determine whether the privilege has been properly invoked as to the redacted portions of the four documents. Defendants have provided the affidavit of John P. Clark, Deputy Assistant Secretary (Operations) of U.S. Immigration and Customs Enforcement ("ICE"), a bureau in the U.S. Department of Homeland Security, who states that ICE controls its communications, reports, inquiries, and procedures to which plaintiffs refer in the redacted portions of the four filings. (Defs.' Opp'n Pls.' Mot. Unseal Four Docs ("Defs.' Opp'n"), Ex. C, Clark Aff. ¶ 1.) Clark states, based on his personal knowledge, review and consideration of information made available to him in his official capacity as well as a review of the information plaintiffs wish to unseal, that the redacted portions of: (1) Plaintiffs' Motion to Compel Production of Documents and Plaintiffs' Memorandum in Support of Their Emergency Motion for a Preliminary Injunction contain information from ICE documents regarding an ongoing counter-terrorism investigation; and (2) Plaintiffs' Response to Defendants' Motion to Dismiss, Plaintiffs' Reply Memorandum in Further Support of Class Certification and Plaintiffs' Memorandum in Support of Their Emergency Motion for a Preliminary Injunction contain ICE information that, if unsealed, would allow any individual, including a terrorist or potential terrorist, to know whether they are the subject of an ICE investigation and would reveal ICE's investigative techniques and procedures regarding those under investigation. (*Id.* ¶¶ 7-11.)

Defendants also provide the affidavit of William S. Heffelfinger III, Deputy Assistant Commissioner, Office of Field Operations, U.S. Customs and Border Protection ("CBP"), which is an agency of the U.S. Department of Homeland Security, who states that CBP controls its directives to which plaintiffs refer in the redacted portions of three of the four filings. (Defs.' Opp'n, Ex. B, Heffelfinger Aff. ¶ 1.) Heffelfinger states, based on his personal review of the information plaintiffs wish to unseal, the factual background of this case and information conveyed to him by his advisors in his official capacity, that the redacted portions of three of the four filings, *i.e.*, Plaintiffs' Response to Defendants' Motion to Dismiss, Plaintiffs' Reply Memorandum in Further Support of Class Certification and Plaintiffs' Memorandum in Support of Their Emergency Motion for a Preliminary Injunction, include information about sensitive CBP investigative techniques, methods, procedures, protocols and policies that, if revealed, will enable terrorists or potential terrorists to avoid scrutiny or determine whether they are targets of investigation. (*Id.* ¶¶ 4-15.)

Based on the affidavits of Clark and Heffelfinger and its own review of the material at issue, the Court finds that the government has provided a sufficient basis to invoke the law enforcement investigatory privilege as to the redacted portions of the four filings. The redacted portions refer to either (1) specific security policies regarding border detention and the concomitant protocols and procedures utilized by border patrol officers during the border screening process or (2) the details surrounding a specific investigation. Because disclosure of this information is likely to compromise defendants' current and future investigations, the Court finds that the privilege is properly invoked.

This, however, does not end the Court's inquiry. As stated above, the law enforcement investigatory privilege is not absolute and "can be overridden in appropriate cases by the need

for the privileged materials."[2] *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997). "The balancing of that need - the need of the litigant who is seeking privileged investigative materials - against the harm to the government if the privilege is lifted is a particularistic and judgmental task." *Id.* "[H]owever, . . . there ought to be a pretty strong presumption against lifting the privilege. Otherwise the courts will be thrust too deeply into the criminal investigative process." *Id.* (citations omitted).

Based on the circumstances of the case, the balance of the need of plaintiffs against the harm to the government if the privilege is lifted clearly weighs heavily in favor of the government. In this case, plaintiffs cannot argue that they have a need for the redacted materials submitted with their filings because two of the plaintiffs as well as plaintiffs' counsel (whose job it is to craft arguments on plaintiffs' behalf) were provided the materials under the agreed Modified Protective Order. Plaintiffs' need, as it relates to the litigation of this case, has thus been satisfied. On the other hand, the harm to the government if the privilege is lifted is significant in that it would reveal information regarding the CBP and ICE's investigations, investigative techniques, methods, procedures, protocols and policies, such that any individual, including any terrorist, could avoid scrutiny and determine whether he or she is a target of investigation.

However, as stated above, to the extent that some of the plaintiffs were not permitted personal access to the redacted materials under the Modified Protective Order, those plaintiffs are on the same footing as the public. The Court also "must balance the public interest

---

[2] Although some courts have adopted the ten-factor test enunciated in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973), the Seventh Circuit has not done so. *See, e.g., Dellwood Farms*, 128 F.3d at 1125; *Lewis v. City of Chi.*, No. 04 C 3904, 2004 WL 2608302, at *2 n.2 (N.D. Ill. Nov. 16, 2004) (noting that Seventh Circuit has not employed the test and finding the test unhelpful and unnecessary to the balancing analysis).

underlying that presumption against [the litigant's] interest in confidentiality." *In re Cont'l*, 732 F.2d at 1313. "Public scrutiny over the court system serves to (1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding." *Grove Fresh Distribs.*, 24 F.3d at 897. "The difficulties inherent in quantifying the First Amendment interests at issue require that we be firmly convinced that disclosure is inappropriate before arriving at a decision limiting access. Any doubts must be resolved in favor of disclosure." *Id.*

This case presents this Court with a very delicate balancing of defendants' compelling law enforcement and investigation interests in screening and detecting terrorists entering the nation's borders and the public's right to determine whether the judicial rulings in this case have a sound basis in law and in fact. With regard to the policy concern that public scrutiny serves to foster more accurate fact finding, the Court notes that, due to the procedural posture of the case, it could not and did not rely on any facts plaintiffs included in the redacted portions of the filings to dispose of any of their claims. In ruling on the motions to compel, for class certification and to dismiss, the Court did not dispose of any claim with prejudice. For purposes of those motions, the Court assumed all of plaintiffs' allegations were true and only dismissed plaintiffs' procedural due process claim without prejudice for failure to state a claim. Plaintiffs were free to amend their complaint to restate their claim. Due to the procedural posture of the case, the privileged information that plaintiffs included in their briefs would neither have provided the public with a greater understanding of plaintiffs' claims nor shed any light on the adjudication of them. Thus, one of the primary policy concerns justifying the need for public scrutiny simply has not yet come into play. In so holding, the Court expresses no view as to whether defendants have established good cause or whether the presumption of access has been rebutted with regard

to materials used in other pretrial stages, *e.g.*, summary judgment, where the Court must determine whether genuine issues of material fact exist for trial.

Further, the policy concerns of allowing public scrutiny to promote community respect for the rule of law and provide a check on the activities of judges and litigants are not to be taken lightly. To be sure, the public has an "interest in assuring that the courts are fairly run and judges are honest." *In re Cont'l*, 732 F.2d at 1314. "While sealing of one document in one case may not have a measurable effect on confidence in judicial integrity or on the effective operation of the courts, the effect of a consistent practice of sealing documents could prove damaging." *Id.* Thus, documents "used in the *adjudication stages* . . . should be available for public inspection unless exceptional circumstances require confidentiality." *Id.* (emphasis original).

The Court holds that it has not yet reached the adjudication stage of plaintiffs' claims. As stated above, the Court has not yet been called on to examine the merits of the claims. It has merely ruled on the parameters of discovery, the certification of the class, and the sufficiency of the complaint. Given the salient concerns of protecting information relating to defendants' counter-terrorism policies, procedures and investigations that are unique to this case and given that it has not yet been asked to dispose of any claims based on the facts provided in the redacted portions of plaintiffs' filings, the Court has weighed the competing interests and is firmly convinced that the information should not be unsealed. Suppression of the redacted information is crucial to preserve higher values of protecting the government's interest in current and future investigations and preventing potential terrorists from being able to avoid scrutiny. Further, sealing the information at issue in this motion at this stage in the litigation is narrowly tailored to serve that interest.

Plaintiffs argue that the information in the sealed portions of their filings, albeit a very diluted version of the information, has already been released to the public such that public

12

disclosure of the redacted information will not cause any harm to law enforcement, national security or other governmental interests. Specifically, they argue the information has been (1) publicly alleged by plaintiffs and summarized by defendants; (2) discussed by journalists in newspaper articles and communicated in letters from U.S. Senators to Mr. Rahman; and (3) described in publicly available documents or released in virtually identical form on the Internet.

Plaintiffs' argument seems to be based on some type of waiver theory and is raised for the first time in their reply brief in support of their motion to unseal. Because they did not address waiver in their opening brief, the Court deems their waiver arguments waived. *See James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998) ("Arguments raised for the first time in a reply brief are waived."). In short, plaintiffs failed to articulate any factual or legal basis for waiver in their opening brief. (*See* Pls.' Mot. Unseal Four Pleadings (providing a total of two textual sentences in the discussion section: one sentence with citations stating the general rule and one unsupported sentence of argument stating in full: "There is a strong presumption of public access to court proceedings. Public disclosure of the complete versions of the four pleadings discussed herein, and all exhibits attached thereto, will not harm any governmental law enforcement or other interest.").) Again, out of an abundance of caution, the Court addresses plaintiffs' arguments raised in their reply brief in terms of the balancing test, the only issue mentioned in passing in their opening brief.

First, the fact that plaintiffs have publicly alleged facts and that defendants have publicly summarized plaintiffs' allegations does not weigh in favor of lifting the privilege. If a court were to hold that allegations alone were sufficient to overcome the privilege, it would have the practical effect of rendering it a nullity.

Second, the fact that newspaper articles, examples of which are cited by plaintiffs, have discussed in general terms the problems faced by Arab or Muslim travelers, including Mr.

13

Rahman, does not weigh in favor of lifting the privilege. Although plaintiffs argue that the publicity surrounding Mr. Rahman's repeated border detention renders unnecessary any secrecy relating to his detentions, the government's interest in preventing public broadcast of its protocols and methods of responding in specific instances of detention outweighs the public's right of access. Further, that information relating to Mr. Rahman was discussed generally in letters written to him from U.S. Senators does not mean that public interest in accessing the detailed reports and information regarding him or his status necessarily outweighs the government's interest in protecting that information from persons who might benefit from knowing such information or status. As stated above, defendants have a compelling interest in protecting information that would reveal how border patrol agencies detect various levels of threat and what level of scrutiny is employed if there is a perceived threat. The newspaper articles and letters from Senators do not establish that revealing the details of defendants' policies, procedures, techniques, methods, and investigations will not harm defendants' antiterrorism efforts.

Third, that publicly available documents describe generally the U.S. practice of border screening that involves a Terrorist Screening Database ("TSDB") does not mean that the public's interest in accessing the redacted portions of plaintiffs' documents outweighs the government's interest in keeping such details confidential. The Court has examined the publicly available documents cited by plaintiffs in their reply brief that merely describe in broad terms what the TSDB is, how it came into existence, and how it fits into the border screening process. (*See* Pls.' Reply Br. Supp. Mot. Unseal Four Pleadings 11.) In addition, the Court has examined the letter dated March 22, 2006 from Thaddeus M. Bingel, Assistant Commissioner of the Office of Congressional Affairs, to Senator Mike DeWine which states: "Whenever the primary computer terminal responds to a query with an "Armed and Dangerous" alert our officers must follow

14

proper protocol and place the individual in handcuffs to prevent injury to the person or any others that may be in the vicinity." (*Id.*, Ex. 2.) The letter goes on to explain that after several phone calls, the agents determined that the computer response was a false alert. (*Id.*) Defendants do not argue that this letter is not publicly available or privileged. However, this letter does not reveal any details about the policies or procedures that would explain the cause for the "Armed and Dangerous" alert or reasons for the false alert, and therefore, plaintiffs have not explained how this letter eliminates any need for secrecy as to defendants' border screening policies or procedures.

Next, plaintiffs argue that certain sealed information was released in virtually identical form on the Internet and thus the government's interest will not be harmed if such information is unsealed. The Court disagrees. That one government entity has publicly utilized information does not reveal anything about whether a separate government entity uses that same information. In sum, the aforementioned documents and website do not reveal the information in plaintiffs' sealed filings or provide details about the specific policies and procedures utilized during investigations to respond to particular levels of threat. Accordingly, these documents do not establish that the government's interest in protecting law enforcement and investigatory information will not be harmed if the Court were to unseal the privileged information.

Based on the arguments provided by the parties, the Court concludes that the balance of the public interest in accessing the sealed portions of plaintiffs' filings against the harm to the government if the privileged information is unsealed weighs heavily in favor of keeping the information under seal. The Court notes that the Modified Protective Order is not a blanket protective order that seals anything and everything the parties wish to protect. It is limited to those documents entitled to the law enforcement investigatory privilege, which necessitates a balancing test. At this stage of the proceedings, the Court holds that defendants have

demonstrated good cause and have rebutted the presumption of public access to the information redacted from plaintiffs' filings. Sealing only the information provided by plaintiffs in these filings that refer to or reflect such privileged information is narrowly tailored to serve the government's interest at this stage of the proceedings. To reiterate, the Court expresses no view as to whether it would reach the same result with regard to materials used in other pretrial stages.

## Conclusion

For the foregoing reasons, the Court denies plaintiffs' motion to unseal four pleadings [doc. no. 212].

**SO ORDERED.**　　　　　　　　　　　　　　ENTERED: 9/28/07

HON. RONALD A. GUZMAN
**United States District Judge**